## HELMS vs UNITED STATES.

Opinion Delivered June 7, 1899.

1. *Conviction for Murder—Degree—Arrest of Judgment.*

Defendant was indicted for murder in the second degree. The jury found him guilty of murder "murder without capital punishment" without designating any degree. *Held*, That as only one degree of murder is prescribed by the United States statute, a motion in arrest of judgment was properly overruled.

2. *Directing defendant to leave Court room—Not error.*

The mere fact that defendant was directed to leave the court room during his trial, if nothing was done, and no step taken during his absense, does not constitute reversible error.

3. *Deputy Constable—None in Indian Territory—Evidence.*

There is no provision under the law in force in the Indian Ter-

ritory for the appointment of a deputy constable, and on a prosecution for murder, an alleged commission as deputy constable on behalf of defendant was properly excluded from the evidence.

4. *United States Commissioner's Court—Not Equivalent of County Court.*

The court of the United States Commissioner in the Indian Territory is not the equivalent of county court in Arkansas. It has none of the attributes and performs none of the purposes of such court.

5. *Evidence of Defendant's belief that he was acting as Deputy Constable.*

Proof that defendant believed that he was acting as deputy constable, and was in possession of what purported to be a commission as such was properly admitted in evidence.

6. *Private party trying to make arrest a Trespasser.*

Defendant, with four men, all private citizens, went to deceased's premises and attempted to arrest him for a misdemeanor committed many days prior thereto. *Held,* Defendant was a trespasser against whom deceased had a right to defend himself. That defendant was the aggressor and the court properly excluded evidence that defendant acted in self defense.

7. *Defendant not injured by erroneous charge on self defense.*

Defendant not being entitled to a charge on self defence could not be injured by an erroneous charge thereon.

8. *Evidence—Instruction as to Weignt of Defendant's Testimony.*

The court instructed the jury that in determining the weight to be given to the evidence of the defendant, they should take into consideration the fact that he is the defendant, the interest he has in the result of the suit, etc. *Held,* No error though the better practice is, instead of singling out the defendant, and giving the jury the rule by which his tesimony is to be measured, to lay down the rule as to the testimony of all witnesses, including that of defendant.

Appeal from the United States Court for the Northern District.

JOHN R. THOMAS, Judge.

Appellant, Claud E Helms, was indicted, arraigned, tried, and convicted of murder, without capital punishment. Motions for a new trial and in arrest of judgment were filed and overruled, and judgment and sentence entered.   Bill of exceptions were filed, and the case brought to this court. Affirmed.

During the trial of the cause in the court below the following proceedings were had, and, as this seems to be strongly relied upon by appellant as ground for reversal, we will quote from the record in full.

The defendant being on the stand, testifying in his own behalf, Mr. Soper, the United States attorney, asked him: "How long before that time had you been shot at by Clayton Fortmer, for which you had him arrested at Ft. Smith?  (Objected to by counsel for defendant on the ground that it is immaterial and has nothing to do with this case.)  The Court: The question is admitted, but it will have to be proven material afterwards.  If it is not proven material, it will be stricken out.  Mr. Soper: If the court will permit me, I think I can show that it is material.  The Court: I can see one way in which it would be material.  If the prosecuting attorney proceeds on that theory, it will be admitted.  Mr. Soper: I have another theory by which I can show that it is competent, if I am permitted to develop my theory.  The Court: State your theory.  Mr. Soper: I am afraid that if I state my theory now, in the presence of the defendant, it will defeat my purpose.  If the defendant could step aside a moment, until I could state my theory, and the court could then pass upon it— (Defendant here

ordered to_leave the room while_Mr. Soper states his theory to the court. Defendant was recalled, and the district attorney was directed to state his theory in the presence of the defendant, which he did.) The Court: Then it is wholly incompetent, and the objection is sustained."

The defendant also offered in evidence the following paper, which was objected to, and the objection sustained by the court, and exception saved:

"United States of America, Northern District, Indian Territory. Know all men by these presents, that I, Wm. F. Blakemore, constable of the 4th commissioner's district of the Northern District of the Indian Territory, do hereby constitute and appoint C. E. Helms as my lawful deputy, to do any and all business appertaining to the office of constable, and I furthermore ratify all legal acts done by him. Given under my hand this 10th day of August, 1896. Wm. F. Blakemore, Constable.

"I. C. E. Helms, solemnly swear to support the constitution of the United States against any and all foreign nations, and to do my duty as deputy constable, to the best of my abilty. So help me God. C. E. Helms.

"Subscribed and sworn to before me this 10 day of August, 1896. J. G. McCombs, U. S. Comr.

"Approved. J. G. McCombs, U. S. Com."

It further appears from the record that on September 19, 1896, a warrant for the arrest of George Simcoe, the deceased, was issued by the commissioner, and delivered to one Brown, who delivered it to defendant; that under this warrant the deceased was arrested by defendant, and was brought before the commissioner for trial, but escaped from custody, and that no return was made upon the warrant; and that afterwards, in his endeavor to arrest the deceased again, he killed him. Afterwards, on motion of the United States attorney, the testimony as to the first arrest was

excluded by the court, on the ground that it was irrelavant, to which the defendant excepted.

*Cravens, De Grafenreid & Von Weiss*, for appellant.

*P. L. Soper*, for appellee.

CLAYTON, J.    The defendant filed in this case 11 assignments of error.    The first assignment is that the court erred in overruling defendant's motion in arrest of judgment.    The only ground for arrest of judgment set up in the motion is that the indictment only charged murder in the second degree, and the verdict of the jury, in finding the defendant guilty of murder, without finding whether he was guilty in the first or second degree, was error and furnished no verdict upon which to found a valid sentence.    In the case of Brown vs U. S. (decided by this court at its present term) 2 Ind Ter. 582, this question is fully considered.    In that case we decide that in this jurisdiction the statute of the United States relating to the crime of murder prevails, and as by that statute the crime is not divided into murder in the first and second degrees, as is done by Mansfield's Digest, juries here are not required to and cannot, by their verdict of guilty, find either of these degrees of murder, but but must find either that the defendant is guilty of murder, or of murder without capital punishment, as provided by the United States statutes relating to that crime.    In this case the verdict was, "We, the jury, find the defendant guilty of murder as charged in the within indictment, without capital punishment."    The court did not err in overruling defendant's motion in arrest of judgment.

Murder. One degree only.

The third assignment of error, which is the next one insisted on by defendant's counsel, is as follows: "The court erred in excluding appellant from the court room during the trial of this cause, at the request of the prosecuting

attorney, while said attorney presented to the court, and in the presence and hearing of the jury, an argument as to the admissibility of certain evidence, which argument and theory he did not wish the appellant to hear or know." .This assignment is not sustained by the record. The record nowhere shows that anything was done, or any step taken in the trial, during defendant's absence. The language of the record is: "Defendant here ordered to leave the room while Mr. Soper [the United States attorney] states his theory to the court. Defendant was recalled, and the district attorney was directed to state his theory in the presence of the defendant, which he did." After which the defendant's objection to the admissibility of the evidence was sustained. As far as this record is concerned, it does not appear that anything was said or done in the progress of the trial in the absence of the defendant, but it does affirmatively appear that which was said and done was in his presence. The mere fact that he was permitted or directed to leave the court room during the trial, if nothing was done and no steps taken during his absence, does not constitute reversible error. The reasonable presumption of the facts, as they appear from the record, is that the court, dealing with the defendant as a witness on the stand, inadvertently directed him to leave the court room, as would have been a proper thing to have done had he been only a witness, but shortly afterwards, and before anything in the progress of the trial had been done, discovering his error, directed his return, and the trial proceeded. The facts of a case must always and exclusively be gathered from the record, and the error complained of must there affirmatively appear. The record cannot be corrected or amended by an assignment of error, or by the brief of counsel. The record, in this particular, shows no prejudicial error.

The fourth assignment of error is as follows: "The court erred in refusing to permit appellant to introduce in

<div style="margin">Directing defendant to leave court room.</div>

evidence the commission issued him as deputy constable. The introduction of same was objected to by the prosecution on the ground that the commission was void, and that there was no such office, under the law, as deputy constable, which motion was sustained by the court." The defendant had what purported to be a commission from a constable, appointtng him to the position of a deputy constable, and claimed that at the killing he was so acting, and had in his possession a warrant of arrest for deceased, charging him with a misdemeanor, which he was then trying to serve. The introduction in evidence of the said commission was objected to by the United States attorney on the ground that in this jurisdiction there is no such office provided for by law. The objection was sustained by the court. The statute of the United States nowhere provides for the appointment of a deputy constable. It is claimed, however, that the statute providing for the appointment of constables in the Indian Territory gives to this officer the same power of appointment as an Arkansas constable. Section 5 of the act of congress of March 1, 1895 (28 Stat. 696), provides that the judge in each district may appoint a constable for each commissioner's district designated by the court, which appointment shall be in writing, etc., and the constable so appointed shall perform all the duties required of constables by the laws of Arkansas (chapter 24, Mansf. Dig.). The said chapter 24 of Mansfield's Digest provides for the election of constables, and, in various sections, specifically names their duties. Then follows their power to appoint deputies, to-wit:

"Sec. 594.   Each constable may appoint one or more deputies.

"Sec. 595.   The appointment of such deputies shall be made to the approval of the county court."

By Mansfield's Digest, the right of a constable to

appoint a deputy is not a duty, but a mere power conferred upon him by the statute, which he may or may not exercise, at his option. But it is claimed that, inasmuch as the United States statute nowhere defines the powers of a constable, by necessary implication they must be the same as those of Arkansas; and this is granted, in so far as this power is necessary to the performance of the duties of his office. But the power to appoint subordinates is not such a necessity. Here the power is especially conferred by the Arkansas law, but the provision of the federal statute that the constable shall perform all of the duties named by Mansfield's Digest does not, either directly or by necessary implication, confer the power to appoint. And, further, the fact that the United States law nowhere makes any provision for the payment of a deputy constable evidences the fact that no such officer was intended. But, if it be conceded that the power to appoint a deputy was conferred by the statute, the commission was invalid and void. It was approved only by a United States commissioner, while the statute (section 595, Mansf. Dig.) requires the approval to be by a county court. In this jurisdiction the court of a United States commissioner is not the equivalent of a county court in Arkansas. It has none of the attributes, nor does it perform any of the purposes of such a court. Indeed, it would be hard to conceive of two tribunals more widely variant in the purposes for which they were created, and the duties they were required to perform. This commission was a nullity, and therefore could prove nothing. Proof that the defendant believed that he was acting as a deputy constable, and was in possession of what purported to be a commission as such, was admitted before the jury. This fact was properly proven, independent of the commission. The commission itself, being a nullity, was properly rejected.

*Deputy constable not authorized.*

*U. S. commissioner court not equivalent of county court in Arkansas.*

*Evidence as to belief of defendant that he was deputy constable.*

"The fifth assignment of error is, "The court erred

in excluding all evidence as to the arrest of deceased, on motion of the prosecution on the ground that no return had been made on the warrant." The proof was that some time before the killing the defendant had arrested the deceased on the same charge that he was endeavoring to arrest him for at the time of the killing, but had failed to made his return on the warrant." When the warrant was produced, and it was found that no return was indorsed upon it, the United States attorney moved to strike out all the evidence relating to the first arrest, because of that fact. The court sustained the motion,—not on the ground, however, that the return had not been made, but, as the record shows, because the testimony was irrelevant. The warrant was not excluded, but only the testimony relating to the former arrest. The question then is, was that testimony relevant? In all cases where the proof justifies the giving of a charge on the law of self-defense, the defendant is entitled to show that the deceased, prior to the homicide, entertained towards him hostile feelings, that he had made uncommunicated threats against him, or that something had occurred between them to create unfriendly feelings on the part of the deceased. This is allowed as tending to show that at the time of the killing the deceased was the aggressor. If, however, the law of self-defense is not in the case, this testimony becomes irrelevant. As we view this case, the defendant was not entitled to a charge upon the law of self-defense. It was conclusively shown at the trial, by the testimony of the defendant as well as of the government, that the defendant was not an officer, and therefore had no legal authority to arrest for a misdemeanor. The deceased was charged with a breach of the peace,—a misdemeanor,—committed many days prior to the homicide. When, therefore, the defendant, with four armed men with him, all private citizens, went to the deceased's premises, and there attempted to arrest him for that offense, he was doing an

unlawful act.   He was not where he had the right to be, nor
in the lawful pursuit of his business.   He was a trespasser
upon the premises of the deceased, attempting to unlawfully
deprive him of his personal liberty.   Every act he and those
with him did was one aggression, against which the deceas-
ed, in law, had the right to defend himself.   In law and in

*Defendant not entitled to evidence as to self defense.*

fact the defendant was the aggressor.   By this unlawful act
he had provoked the conflict from which he never attempted
to withdraw until after he had killed his adversary.   Under
such circumstances he is cut off from invoking the law of
self-defense.   1 Whart. Cr. Law, 485.   The moment it was
discovered that the defendant's commission was void, the
law of self-defense disappeared from the case, and all testi-
mony dependent upon that theory of the case became irrele-
vant.   We think, therefore, that the court did not err in
excluding the testimony.

The assignments of error from the sixth to the tenth,
inclusive, go to the charge of the court; each specifying
error as to the law of self-defense as given by the court.
Having decided that under the undisputed facts of this case
the defendant was not entitled to a charge upon the law of
self-defense at all, we cannot see how he could have been
prejudiced, even if the court should have committed error

*Erroneous instructed as to self de- fense.  Not error.*

in that part of the charge relating to the law of self-defense.
He got an advantage to which he was not entitled.   We
think that it is not reversible error that he did not get it
technically correct, and therefore we will not undergo the
unnecessary and unprofitable labor of passing further upon
these specifications.

The eleventh and last specification of error is as
follows:   ''The court erred in instructing the jury, over the
defendant's objection, as follows:   'Under the law the de-
fendant is a proper witness in his own behalf, and you
should take into consideration his evidence, in determining

the guilt or innocence of the defendant; but, in determining what weight you will give the evidence of the defendant, you should take into consideration the fact that he is the defendant, the interest he has in the result of the suit, his intelligence or lack of intelligence, his appearance and manner of testifying while on the stand, and, taking all of these facts into consideration, you should give his evidence such weight as you think it entitled to under all the circumstances of the case." In the case of Hicks vs U. S., 150 U. S. 442, 14 Sup. Ct. 144, the language used by the trial judge in his charge to the jury is: "The defendant has gone upon the stand in this case and made his statement. You are to weigh its reasonableness, its probability, its consistency; and, above all, you consider it in the light of the other evidence,—in the light of the other facts. If it be contradicted by other reliable facts, that goes against him, —goes against his evidence. You may explain it, perhaps, on the theory of an honest mistake or a case of forgetfulness; but, if there is a conflict as to the material facts between his statements and the statements of the other witnesses who are telling the truth, then you would have a contradiction that would weigh against the statements of the defendant, as coming from such witnesses. You are to consider his interest in this case,—you are to consider his consequent motive growing out of that interest,—in passing upon the truthfulness or falsity of his statement. He is in an attitude, of course, where any of us, if so situated, would have a large interest in the result of the case,—the largest, perhaps, we could have under any circumstances in life,— and such an interest, consequently, as might cause us to make statements, to influence a jury in passing upon our case, that would not be governed by the truth. We might be led away from the truth because of our desire. Therefore it is but right, and it is your duty, to view the statements of such a witness in the light of his attitude, and in

*Instruction as to interest of defendant. Not erroneous.*

the light of other evidence," Of this charge the supreme
court say: "It is not easy to say what effect this instruc-
tion had upon the jury. If this were the only objectionable
language contained in the charge, we might hesitate in say-
ing that it amounted to reversible error. It is not unusual
to warn juries that they should be careful in giving effect to
the testimony of accomplices, and perhaps a judge cannot be
considered as going out of his province in giving a similar
caution as to the testimony of the accused person." And
Justices Brewster and Brown, in a dissenting opinion, think
that even that charge was not objectionable. While we find
no reversible error in this charge, we think the better prac-
tice, instead of singling out the defendant, and giving the
jury the rule by which his testimony is to be measured, is to
lay down the rule as to the testimony of all the witnesses,
including that of the defendant. The judgment of the court
below is affirmed.

SPRINGER, C. J., and TOWNSEND, J., concur.